# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

FORD MOTOR COMPANY; and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

STEPHEN BURTON

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 19 2018

Sherri R. Carter, Executive Officer/Clerk of Court
By: Judi Lara, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Stanley Mosk Courthouse | CASE NUMBER: *(Número del Caso):* BC 722588 |
|---|---|

111 North Hill Street
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael Resnick & Neil Gieleghem; 153 1/2 North Arnaz Drive, Beverly Hills, CA 90211; (833) 428-9222

| DATE: *(Fecha)* SEP 19 2018 | SHERRI R. CARTER Clerk, by *(Secretario)* | Judi Lara | , Deputy *(Adjunto)* |
|---|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010)*.)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]
1. [✓] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)          [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership) [✓] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [✓] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
SUMMONS
Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Michael D. Resnick (SBN 245215)
e-mail: mresnick@clrattorney.com
Neil Gieleghem (SBN 107389)
e-mail: ng@clrattorney.com
**Consumer Legal Remedies, APC**
153 ½ North Arnaz Drive
Beverly Hills, CA 90211
Telephone:  (310) 213-1398
Facsimile:  (213) 210-2196

Attorneys for Plaintiff,
STEPHEN BURTON

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 18 2018

Sherri R. Carter, Executive Officer/Clerk of Court
By: Judi Lara, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES – UNLIMITED JURISDICTION

| | |
|---|---|
| STEPHEN BURTON,<br><br>                Plaintiff,<br><br>   vs.<br><br>FORD MOTOR COMPANY; and DOES 1 through 10, inclusive,<br><br>                Defendants. | Case Nos.:   **BC 7 2 2 5 8 8**<br><br>Hon.:<br>Dept.:<br><br>**COMPLAINT FOR VIOLATION OF STATUTORY OBLIGATIONS**<br><br>JURY TRIAL DEMANDED |

*(left margin, vertical)* CONSUMER LEGAL REMEDIES, APC
153 1/2 NORTH ARNAZ DRIVE, BEVERLY HILLS, CA 90211

*(left margin)* COPY

Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1.      Broadly stated, this lawsuit is a "Lemon Law" case based on defective "DPS6 PowerShift" transmissions that Defendant Ford Motor Company installed in Focus and Fiesta model cars between 2012 and 2016. These transmissions were defectively designed and defectively manufactured, and failed to operate as Ford represented to consumers. Ford, however, continued to install these defective transmissions in Focus and Fiesta cars, even though Ford knew of their defects. Even worse, Ford repeatedly lied to consumers as to the reasons for the problems consumers experienced. As a result, consumers were and are "stuck" in unsafe Focus and Fiesta autos that have minimal resale value due to the transmission defects, which have been widely published. Due to the defects in the transmissions, Ford's failure to remedy those problems, and Ford's fraud on consumers, Plaintiffs have been forced to join the ranks of tens of thousands of consumers who have sued Ford in California and other courts nationwide.

2.      As used in this Complaint ("Complaint"), the word "Plaintiff" shall refer to Plaintiff STEPHEN BURTON.

3.      Plaintiff is a resident of Sacramento County, California.

4.      As used in this Complaint, the word "Defendant" shall refer to all Defendants named in this Complaint.

5.      Defendant Ford Motor Company ("Ford") is a corporation organized and in existence under the laws of the State of Delaware and registered with the California Department of Corporations to conduct business in California. At all times relevant herein, Ford was engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling automobiles and other motor vehicles and motor vehicle components in Los Angeles County and other locations within California.

6.      The causes of action to this Complaint arise out of the warranty obligations of Ford for a vehicle purchased by Plaintiff and for which Ford issued a written warranty. Plaintiff also alleges that Ford concealed a known defect from Plaintiff: A defective component known

1

CONSUMER LEGAL REMEDIES, APC
153 1/2 NORTH ARROYO DRIVE, BEVERLY HILLS CA 90211

1   as the "DPS6 PowerShift Transmission" (hereinafter "PowerShift Transmission"). This

2   Powershift Transmission is installed by Ford in its 2011-2015 "Fiesta" model automobiles, and

3   its 2012-2015 "Focus" model automobiles. As detailed below, Ford also misrepresented to

4   Plaintiff the workings, performance, and reliability of said PowerShift Transmission.

5        7.    Plaintiff is ignorant of the true names and capacities of the Defendants sued under

6   the fictitious names DOES 1 to 10, and said DOES are sued pursuant to Code of Civil Procedure

7   section 474. When Plaintiff becomes aware of the true names and capacities of the Defendants

8   sued as DOES 1 to 10, Plaintiff will amend this Complaint to state their true names and

9   capacities.

10        8.    All acts of corporate employees as alleged were authorized or ratified by an

11   officer, director or managing agent of the corporate employer.

12        9.    Each Defendant whether actually or fictitiously named herein, was the principal,

13   agent, (actual or ostensible), or employee of each other Defendant and in acting as such principal

14   or within the course and scope of such employment or agency, took some part in the acts and

15   omissions hereinafter set forth by reason of which each Defendant is liable to Plaintiff for the

16   relief prayed for herein.

17        10.    On or about October 1, 2016, Plaintiff purchased a 2016 Ford Fiesta vehicle,

18   Vehicle Identification Number 3FADP4EJ0GM136177 (hereafter the "Vehicle"), which was

19   manufactured and/or distributed by Defendant. Express warranties accompanied the sale of the

20   Vehicle to Plaintiff by which Ford undertook to preserve or maintain the utility or performance

21   of Plaintiff's Vehicle or provide compensation if there was a failure in such utility or

22   performance. The Vehicle was purchased or used primarily for personal, family, or household

23   purposes.

24        11.    The Vehicle was delivered to Plaintiff with serious defects and nonconformities

25   to warranty and developed other serious defects and nonconformities to warranty including, but

26   not limited to a defective transmission as detailed, *infra*.

27

28

*CONSUMER LEGAL REMEDIES, APC*
*151 1/2 North Arnaz Drive, Beverly Hills, CA 90211*

**COMPLAINT; JURY TRIAL DEMANDED**

**The PowerShift Transmission Defect**

12.     The Vehicle was manufactured by Ford and delivered to Plaintiff with a PowerShift Transmission. Ford offered the PowerShift Transmission as the sole "automatic transmission" option in the Vehicle.

13.     Contrary to Ford's option description, the PowerShift Transmission is neither a conventional automatic transmission, nor a conventional manual transmission. Instead, the Powershift Transmission is a "computer-automated" manual transmission.

14.     Conventional manual transmissions use a driver-controlled clutch, typically by way of a clutch foot pedal. By depressing and releasing this clutch foot pedal, the driver causes the clutch mechanically to engage and disengage the engine from the transmission, which allows the vehicle to continue to travel while the driver manually changes gears. Because such a clutch mechanism allows for transfer of virtually all of the engine's power to the transmission, a properly designed and operating manual transmission is highly efficient. However, proper operation of a manual transmission can be difficult for less-experienced drivers and can result in the vehicle jerking or shuddering improper operation. As a result, conventional manual transmissions are disfavored by some consumers.

15.     In contrast, conventional automatic transmissions relieve the driver from operating the clutch, typically through the use of a fluid-filled device called a torque converter. The torque converter substitutes for the manual transmission's clutch, transmitting power from the engine to the transmission through a fluid medium. While automatic transmissions offer increased comfort and convenience, they are generally less fuel efficient, and are slower-shifting, than manual transmissions, because the torque converter transfers power through fluid less efficiently than a mechanical clutch.

16.     Due to these marketing/customer preference and engineering constraints, Ford marketed and sold its PowerShift Transmission as an "automatic transmission" that offered the "*Best of Both Worlds*" – e.g., a combination of a manual transmission's efficiency and fuel economy with an automatic transmission's ease of operation and driver convenience. Consistent with this, Ford internally refers to the Powershift Transmission as the "DPS6 automatic

3

**COMPLAINT; JURY TRIAL DEMANDED**

transmission."

17.    In truth, the PowerShift Transmission, despite Ford's representations to consumers, is a manual transmission in terms of it having a clutch that must be disengaged to shift gears. The Powershift Transmission has no torque converter; instead, it uses two mechanical clutches to engage/disengage the engine from the transmission. In turn, the engagement and disengagement of the two clutches, and the shifting of the gears, is controlled by "Transmission Control Modules" ("TCMs"). These TCMs are programmable computers that process information from various sensors that monitor the vehicle's condition and driving conditions (e.g., engine R.P.M.; load), and shift gears based on the TCM's programming. Further, whereas similar "automated manual" transmissions on the market use ''wet'' clutches bathed in oil, Ford's PowerShift Transmission clutches operate "dry" and lack the oil pumps and other components of a wet clutch system.

18.    Ford designed the PowerShift Transmission in an effort to meet heightened governmental and consumer expectations for fuel economy, performance, convenience, and efficiency. Ford designed and marketed its PowerShift Transmission as a more advanced and fuel-efficient automatic transmission. According to Ford's press release dated March 10, 2010, "PowerShift, with dry-clutch facings and new energy-saving electromechanical actuation for clutches and gear shifts saves weight, improves efficiency, increases smoothness, adds durability and is sealed with low-friction gear lubricant for the life of the vehicle. The transmission requires no regular maintenance."

19.    In theory, a computer-controlled, automated manual transmission may provide the convenience of an automatic transmission without sacrificing the fuel efficiency and shift speed of a manual transmission. In practice however, Ford's PowerShift Transmission is plagued by numerous problems and safety concerns.

20.    Plaintiff is informed and believes, and based thereon alleges, that the PowerShift Transmission is defective in its design and/or manufacture. This can result in various problems, including, but not limited to, sudden acceleration, delayed acceleration, hesitation on acceleration, difficulty stopping the vehicle, jerking, bucking and kicking, shuddering on

CONSUMER LEGAL REMEDIES, APC
333 1/2 NORTH ARNAZ DRIVE, BEVERLY HILLS, CA 90211

4

1    acceleration, lack of power, delayed downshifts, transmission fluid leaks, and/or premature

2    wear of the internal components (collectively, the "Transmission Defect").

3        21.    The Transmission Defect causes unsafe conditions in vehicles equipped with the

4    PowerShift Transmission, including, but not limited to suddenly lurching forward, delayed

5    acceleration, and sudden loss of forward propulsion. These conditions present a safety hazard

6    because they severely affect the driver's ability to control the car's speed, acceleration, and

7    deceleration. For example, these conditions make it difficult to safely merge into traffic. Even

8    more troubling, the Transmission Defect can cause the vehicle to fail to downshift and

9    decelerate when the brake pedal is depressed. Instead, the PowerShift Transmission continues

10   to transfer power to the transmission, and even surges the engine's R.P.M.s. As a result, drivers

11   of vehicles equipped with the PowerShift Transmission have reported their vehicles lurching

12   forward into intersections at red lights despite their braking efforts to stop the car.

13       22.    On information and belief, the Transmission Defect also causes premature wear

14   to the PowerShift Transmission's clutch plates and other components, which results in

15   premature transmission failure and requires expensive repair, including premature transmission

16   replacement.

17       23.    As early as 2010, Ford knew or should have known that the PowerShift

18   Transmission contained one or more design and/or manufacturing defects that negatively affect

19   drivability and caused safety hazards.

20       24.    Plaintiff is informed and believes, and based thereon alleges, that prior to the sale

21   of the Vehicle, Ford knew, or should have known about the Transmission Defect through its

22   exclusive knowledge of non-public internal data about the Transmission Defect, including: pre-

23   releasing testing data; early consumer complaints about the Transmission Defect to Ford's

24   dealers who are Ford's agents for vehicle repairs; dealership repair orders; testing conducted in

25   response to those complaints; "Technical Service Bulletins" ("TSBs") developed by Ford and

26   communicated to its dealers and authorized repair facilities; the existence of substantially

27   identical defects in substantially identical European and Australian model vehicles released

28   prior to Ford's marketing and sale of the PowerShift Transmission domestically; and other

CONSUMER LEGAL REMEDIES, APC
15312 NORTH ARANGI DRIVE, BEVERLY HILLS, CA 90211

CONSUMER LEGAL REMEDIES, APC
1551 1/2 NORTH ARNAZ DRIVE, BEVERLY HILLS, CA 90211

internal sources of information possessed exclusively by Ford and its agents. Nevertheless, Ford and its agents have actively concealed the Transmission Defect, and failed to disclose this defect to Plaintiff at the time of purchase of the Vehicle and thereafter.

25.     Before offering vehicles equipped with the PowerShift Transmission in the United States, Ford offered substantially identical vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia, albeit with wet clutches (i.e., clutches bathed in oil, as described above). Although the domestic version of the PowerShift Transmission utilizes dry clutches as opposed to the European and Australian version's wet clutches, Ford acknowledges that the PowerShift Transmission offered for sale in the United States is "derivative" of the design from the European and Australian models. This is significant, as the European and Australian versions of the dual-clutch transmission suffered from defects and performance issues similar to the Transmission Defects in the Powershift Transmission known to Ford as alleged herein.

26.     In addition to obtaining years of feedback and testing from its European and Australian dual-clutch transmission, according to Ford, its team:

> …logged approximately three years or 6,000 man-hours of computer aided mathematical modeling, simulation and analysis of engine speeds, torque and clutch capacity in only 24 months real time to prove the THF concept was production ready.

27.     In addition, Ford boasted about its extensive testing of the vehicle in its marketing brochures that were publicly distributed:

> Obsessive was the starting point. You'll enjoy every drive because Focus engineers obsessed over every last detail. Focus was thoroughly tested in an assortment of harsh environments and situations to make sure you get a car beyond your wildest imagination.

28.     The PowerShift Transmission uses a program called "Torque Hole Filling" ("THF"), which is a combination of computer algorithms and computer-aided tools to fill the "torque hole," which is commonly perceived as hesitation while shifting. To promote sales,

6

Ford claims its THF technology would create a smoother-driving experience for the customer.

29.     Despite these claims, consumers have not experienced a smoother driving experience from THF, or from any other technology incorporated in the PowerShift Transmission. Multiple reviews in automotive journals and customer complaints have documented and confirmed that the PowerShift Transmission has continuously exhibited the Transmission Defect malfunctions, maladjustments, and nonconformities of which Plaintiff now complains.

30.     For example, in a 2011 New York Times review of the Ford Focus, the reviewer stated that "Ford programmed the PowerShift Dual-clutch transmission to change gears in odd and infuriating ways" and that "[t]he transmission is often in the wrong gear at the wrong time, resulting in jerks, pauses and lethargic acceleration."

31.     In response to these criticisms, Greg Burgess, an engineer at Ford, conceded in the same New York Times article that "[i]t is quite a challenge to deliver something that is very, very fuel efficient and yet feels like a conventional automatic, and there are some balances and some trade-offs that we make."

32.     In response to complaints about the Transmission Defect, in 2010 and 2011, Ford issued several Technical Service Bulletins ("TSBs") to its dealers and authorized repair facilities acknowledging defects in the PowerShift Transmission. Ford's TSB from September 2010 covering the 2011 Ford Fiesta, informed dealers and service personnel of "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or check engine light with transmission control module (CM) diagnostic trouble code . . . . "

33.     Similarly; Ford's TSB released on January 1, 2011, covering the 2011 Ford Fiesta with the PowerShift Transmission, informed dealers and service personnel of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

34.     Ford's TSB from March 31, 2011 also covering the 2011 Ford Fiesta informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in

CONSUMER LEGAL REMEDIES, APC
153 1/2 NORTH MOONOZ DRIVE, BEVERLY HILLS, CA 90211

1  reverse only."

2       35.    Ford issued two separate TSBs in May 2011, both covering the Ford Fiesta.

3  These TSBs addressed problems with the PowerShift Transmission including "concerns in

4  Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed

5  engagement, intermittent engagement, noise during engagement . . . ."

6       36.    Another Ford TSB released in September 2011 advised dealers to reprogram the

7  transmission computer if 2011 Ford Fiesta owners complained about "hesitation when

8  accelerating from a low speed after coast down, harsh or late upshift, harsh shifting during low-

9  speed tip-in or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

10       37.    The 2011 Ford Focus also was the subject of a September 2011 Ford TSB, which

11  informed dealers and service personnel of transmission problems including: "RPM flare on

12  deceleration coming to a stop, rough idle on deceleration coming to a stop, intermittent engine

13  idle fluctuations at a stop, intermittent vehicle speed control inoperative, intermittent harsh

14  engagement/shift . . . ."

15       38.    In May of 2012, Ford issued a "Customer Satisfaction Program: Program

16  Number 12837." In a letter sent to 2012 Ford Focus drivers, Ford indicated that drivers "may

17  experience rough or jerky automatic transmission shifts. In addition, the vehicle may experience

18  roll back when the driver is transitioning from the brake pedal to the accelerator pedal while on

19  a slight incline." Significantly, Ford did not issue a recall and did not warn drivers of the safety

20  risks associated with these known problems.

21       39.    Because Ford will not notify the public that the PowerShift Transmission is

22  defective, Plaintiff (as well as members of the public) is subjected to dangerous driving

23  conditions that often occur without warning.

24       40.    Ford knew about, and concealed, the Transmission Defect present in the Vehicle,

25  along with the Transmission Defect's attendant dangerous safety and drivability problems, from

26  Plaintiff at the time of sale, repair, and thereafter. In fact, instead of repairing the defects in the

27  PowerShift Transmission, Ford either refused to acknowledge their existence (for example,

28  instructing service personnel at Ford dealers to communicate to customers that symptoms

CONSUMER LEGAL REMEDIES, APC
1531/2 NORTH AMASIZ DRIVE, BEVERLY HILLS, CA 90211

8

1   caused by the Transmission Defect were "normal" or "normal operating characteristics" of the

2   transmission), or performed superficial and ineffectual software upgrades that simply masked

3   the symptoms of the Transmission Defect.

4        41.     If Plaintiff knew about these defects at the time of sale, Plaintiff would not have

5   purchased the Vehicle or would have paid substantially less for it.

6        42.     As a result of Plaintiff's reliance on Ford and its agent's omissions and/or

7   misrepresentations, Plaintiff suffered an ascertainable loss of money, property, and value to the

8   Vehicle. Additionally, as a result of the Transmission Defect, Plaintiff was harmed and suffered

9   actual damages in that the Vehicle's transmission is substantially certain to fail before its

10   expected useful life has run.

11                    **Ford Had Exclusive Knowledge of the Transmission Defect**

12        43.     Ford had superior and exclusive knowledge of the Transmission Defect, and

13   knew or should have known that the Transmission Defect was not known or reasonably

14   discoverable by Plaintiff, before Plaintiff purchased the Vehicle.

15        44.     Plaintiff is informed and believes, and based thereon alleges, that before Plaintiff

16   purchased the Vehicle, and since at least 2010, Ford knew about the Transmission Defect

17   through sources not available to consumers, including pre-release testing data, early consumer

18   complaints about the Transmission Defect to Ford and its dealers, testing conducted in response

19   to those complaints, high failure rates and replacement part sales data, aggregate data from Ford

20   dealers, among other internal sources of aggregate information about the Transmission Defect

21   including, but not limited to, similar defects in the substantially identical European and

22   Australian models.

23        45.     Before the Vehicle was available for sale in the United States, Ford offered the

24   same vehicles, equipped with a similar dual-clutch transmission, in Europe and Australia.

25   Although the United States version utilizes dry clutches as opposed to the European and

26   Australian version's wet clutches, Ford acknowledged in its own press release that the

27   PowerShift Transmission offered for sale in the United States is a "derivative" of the design of

28   the European and Australian models. European and Australian versions of the dual-clutch

9

1    transmission suffered from similar defects as alleged herein.

2        46.    In addition to having access to years of analysis and feedback concerning the

3    prior dual-clutch design, Ford also acknowledged in its own press releases the extensive pre-

4    release testing and computer aided modeling, simulation, and analysis it conducted before

5    bringing the PowerShift Transmission to the United States market.

6        47.    Ford was also aware of the Transmission Defect through the numerous

7    complaints it received, both from consumers and from automotive journalists, who roundly

8    criticized the performance of the PowerShift Transmission. Indeed, a July 15, 2011 New York

9    Times review of the Ford Focus criticized the PowerShift transmission's "jerks, pauses and

10   lethargic acceleration." In that same article, Greg Burgess, a Ford engineer, admitted that Ford

11   made "trade-offs" in terms of drivability in order to "deliver something that is very, very fuel

12   efficient."

13       48.    The review went on to state: "the logical explanation is that they [the Ford

14   Engineers] were given a fuel economy target and no option but to meet it. One might wonder

15   why a top executive didn't step in to keep the transmission from reaching market."

16       49.    The existence of the Transmission Defect is a material fact that a reasonable

17   consumer would consider when deciding whether to purchase or lease a vehicle equipped with

18   a PowerShift Transmission. Had Plaintiff known that the Vehicle was equipped with a defective

19   transmission, he would not have purchased the Vehicle equipped with the PowerShift

20   Transmission or would have paid substantially less for it.

21       50.    Reasonable consumers, like Plaintiff, reasonably expect that a vehicle's

22   transmission is safe, will function in a manner that will not pose a safety hazard, and is free

23   from defects. Plaintiff further reasonably expects that Ford will not sell or lease vehicles with

24   known safety defects, such as the Transmission Defect, and will disclose any such defects to its

25   consumers when it learns of them. He did not expect Ford to fail to disclose the Transmission

26   Defect to him and to continually deny the defect.

### Ford's Failure to Disclose the PowerShift Transmission Defect

28       51.    Ford has never disclosed the Transmission Defect to Plaintiff prior to the

10

**COMPLAINT; JURY TRIAL DEMANDED**

CONSUMER LEGAL REMEDIES, APC
153 1/2 NORTH ARNAZ DRIVE, BEVERLY HILLS, CA 90211

purchase of the Vehicle or at any point during ownership of the Vehicle, and Ford has never instructed its dealerships to disclose the Transmission Defect to drivers or potential purchasers or lessees of vehicles equipped with the PowerShift Transmission.

52.     The Transmission Defect was not known or reasonably discoverable by Plaintiff before he purchased the Vehicle; or without experiencing the defect first hand and exposing himself to an unreasonable safety risk.

53.     Ford has remained silent even as it issued service bulletins, conducted internal investigations, and witnessed the failure of the transmission in earlier models of their vehicles distributed in Europe and Australia.

54.     Ford's refusal to publicly acknowledge the Transmission Defect created widespread confusion. Ford's failure to notify consumers, dealerships, or auto-technicians prevents the PowerShift Transmission problem from being efficiently diagnosed. Drivers are led to believe that the problems they are experiencing with the transmission in their vehicle are actually "normal characteristics" of the transmission. Likewise, the lack of information makes it less likely that dealerships and auto technicians will be able to diagnose and fix and document the Transmission Defect or advise Plaintiff about the dangers of driving the Vehicle.

55.     As a result of Ford's inaction and silence, Plaintiff was entirely unaware that he purchased and continued to drive, an unsafe and unreliable vehicle. As Ford knows, a reasonable person would consider the Transmission Defect important and would not purchase or lease a vehicle equipped with the Transmission Defect were the defect disclosed in advance or would pay substantially less for the vehicle.

### Ford Has Actively Concealed the Transmission Defect

56.     While Ford has been fully aware of the Transmission Defect affecting the Vehicle, Ford and its agents actively concealed the existence and nature of the Transmission Defect from Plaintiff at the time of purchase, repair, and thereafter. Specifically, Ford failed to disclose or actively concealed at and after the time of purchase or repair:

a.   any and all known material defects or material nonconformity of the Vehicle, including the Transmission Defect in the PowerShift Transmission;

CONSUMER LEGAL REMEDIES, APC
3851/2 NORTH ARROGO DRIVE, BEVERLY HILLS CA 90211

11

b.  The Vehicle and its PowerShift Transmission, were not in good working order, were defective, and were not fit for the intended purposes; and

c.  The Vehicle and its PowerShift Transmission were defective, despite the fact that Ford learned of such defects through alarming failure rates, customer complaints, as well as through other internal sources as early as 2010.

57.   As a result of the Transmission Defect, Ford was inundated with complaints regarding the PowerShift Transmission. In July 2011, Ford implemented a communications strategy intended to enlighten consumers about some of the behavior characteristics of the PowerShift Transmission in order to "improve customer expectations." In a memo with instructions sent to Ford dealers and service personnel, which Ford intended its dealers and service personnel to communicate to consumers, Ford noted that some of the common and normal characteristics of the PowerShift Transmission include double clicking metal sounds, coast down whine, low speed grinding, and reverse gear whine.

58.   However, despite Ford's public insistence that these behavioral characteristics of the PowerShift Transmission were normal, in 2010 and 2011, Ford issued several TSBs to its dealers in the United States acknowledging defects in the PowerShift Transmission. Ford's TSB from September 2010, covering the 2011 Ford Fiesta, informs dealers how to address and attempt to repair the PowerShift Transmission in response to "concerns such as no engagement or intermittent no engagement in Drive or Reverse when shifting from Park to Drive or Reverse, grinding noise during engagement, and/or a check engine light with transmission control module (TCM) diagnostic trouble code . . . ."

59.   Ford's TSB released on January 1, 2011, covering the 2011 Fiesta with the PowerShift Transmission, informs dealers of problems with the PowerShift Transmission causing "a loss of power, hesitation, surge, or lack of throttle response while driving."

60.   Ford's TSB from March 31, 2011, also covering the 2011 Ford Fiesta, informs dealers of problems where the PowerShift Transmission "exhibit[s] a rattle/grind noise in reverse only."

61.   Ford issued two separate TSBs in May 2011, both covering the Ford Fiesta.

These TSBs addressed problems with the PowerShift Transmission including "concerns in Drive or Reverse when shifting from Park to Drive or reverse, no engagement, delayed engagement, intermittent engagement, noise during engagement . . . ."

62.     On information and belief, another Ford TSB released in September 2011 advised dealers to reprogram the transmission computer if 2011 Fiesta owners complained about "hesitation when accelerating from a low speed after coast down, harsh or late 1-2 upshift, harsh shifting during low-speed tip or tip-out maneuvers and/or engine r.p.m. flare when coasting to a stop."

63.     The 2012 Ford Focus was the subject of a Ford TSB in September 2011, which informed dealers of transmission problems including: "RPM flare on deceleration coming to a stop. Rough idle on deceleration coming to a stop, intermittent engine idle fluctuations at a stop, intermittent vehicle speed control inoperative, [and] intermittent harsh engagement/shift . . . ."

64.     In December of 2011, Motor trend magazine called these efforts by Ford a "stealth upgrade" and noted that while "[t]here's no official recall or service campaign . . . . anybody who complains or requests an upgrade at the dealership can have their powertrain control computer re-flashed."

65.     On information and belief, the software upgrades recommended and encouraged by the various TSBs issued by Ford were completely ineffective at addressing the Transmission Defect.

66.     When consumers present vehicles equipped with the PowerShift Transmission to an authorized Ford dealer for repair to the transmission, rather than inform consumers of the Transmission Defect or conclusively repair the problem under warranty, Ford's dealers and authorized repair facilities either inform consumers that their vehicles are functioning properly, or perform superficial and ineffectual software updates that delay or mask the manifestation of the Transmission Defect in an attempt to avoid more comprehensive and expensive repair or replacements under the warranty.

67.     To this day, Ford still has not notified Plaintiff that the Vehicle suffers from a systemic defect that causes the transmission to malfunction.

13

**COMPLAINT; JURY TRIAL DEMANDED**

**All Statute of Limitations Periods are Tolled by the Discovery Rule and the Doctrine of**

**Fraudulent Concealment**

68.　　Ford misrepresented the qualities of the PowerShift Transmission in the Vehicle to Plaintiff at the time of the sale of the Vehicle. Ford also concealed the fact that the PowerShift Transmission was defective.

69.　　Ford continued to misrepresent its ability to repair the Vehicle in conformity with the warranty throughout the warranty period.

70.　　At all relevant times, Ford was aware of the defects in the PowerShift Transmission.

71.　　As described in more detail, *supra*, as early as 2010, Ford began issuing significant technical service bulletins to its authorized dealers explaining the widespread issues with the PowerShift Transmission. At no point prior to the sale of the Vehicle to Plaintiff or during Plaintiff's ownership of the Vehicle did Ford or an authorized dealer ever inform Plaintiff of the ongoing defect or the fact that Plaintiff's Vehicle was not actually equipped with an automatic transmission.

72.　　Ford had a duty to disclose the concealed facts alleged above because Ford knew that Plaintiff did not know a material fact and further knew that such facts were not readily accessible to Plaintiff because Ford actively concealed those facts.

73.　　Ford had a duty to disclose the concealed facts alleged above because Ford made misrepresentations in its marketing materials and window stickers and through its authorized sales representatives about the quality, characteristics, and safety of the PowerShift Transmission.

74.　　Ford had a duty to disclose the concealed facts alleged above because Ford actively concealed material facts in order to induce a false belief.

75.　　Ford intended for Plaintiff to rely on those misrepresentations to conceal the fact that the defective PowerShift Transmission could not be repaired.

76.　　Prior to the sale of the Vehicle, and at all times thereafter, Defendant therefore failed to disclose the existence of the Vehicle's inherent defects to Plaintiff, and Defendant failed to disclose its inability to repair these inherent defects, which prevented the Vehicle from

14

CONSUMER LEGAL REMEDIES, APC
1513 1/2 NORTH AMOROZ DRIVE, BEVERLY HILLS, CA 90211

1    conforming to its applicable warranties. In effect, after the sale of the Vehicle, Defendant

2    fraudulently concealed from purchasers and lessees, including Plaintiff, the fact that the dealers

3    were not properly repairing the defects to the PowerShift transmission, and knew that the limited

4    work that Ford had authorized its dealerships to perform on those vehicles would not properly

5    repair them. Ford also continued to conceal the fact that Plaintiff's Vehicle was not in fact

6    equipped with an automatic transmission as advertised.

7         77.    Because Ford failed to disclose these foregoing facts to Plaintiff, all statute of

8    limitations periods with respect to the sale of the Vehicle were tolled by the doctrines of fraudulent

9    concealment, the delayed discovery rule, and/or equitable tolling. As alleged herein. Ford

10   wrongfully concealed the fact:

11        1)  that the Vehicle was equipped with a manual transmission (the PowerShift

12            Transmission), and

13        2)  that its dealerships were making inadequate repairs that were incapable of addressing

14            the root cause of the Vehicle's malfunctions.

15        78.    Plaintiff did not discover the operative facts that are the basis of the claims alleged

16   herein because the facts were concealed in confidential and privileged documents, which a

17   consumer would not know about and could not obtain.

18        79.    No amount of diligence by Plaintiff could have led to the discovery of these facts

19   because they were kept secret by Ford and therefore, Plaintiff was not at fault for failing to

20   discover these facts.

21        80.    Plaintiff did not have actual knowledge of facts sufficient to put him on notice.

22   Plaintiff did not know, or could have known, about Ford's inability to repair the defects in its

23   PowerShift Transmission because, as alleged above, Ford kept this information highly

24   confidential, and its dealership assured Plaintiff that its repairs were effective.

25   All Statute of Limitations Periods are Tolled by the Tolling Doctrine Established in *American*

26   *Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538 As a Result of the Class Action *Vargas*

27                              *v. Ford Motor Company*

28        81.    Plaintiff gave timely notice of Plaintiff's claims against Ford in the present action

CONSUMER LEGAL REMEDIES, APC
153 1/2 NORTH ARNAZ DRIVE, BEVERLY HILLS, CA 90211

**COMPLAINT; JURY TRIAL DEMANDED**

as a putative class member in a class action, *Vargas v. Ford Motor Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx), which was filed on September 28, 2012. That action was filed within three years of the date of Plaintiff's discovery of his claims against Ford in the present action, as previously described in detail above.

82.     There is no prejudice to Ford in gathering evidence to defend against Plaintiff's individual claims because the class definition in the class action complaint within which Plaintiff was a putative class member and the allegations in the class action lawsuit, *Vargas v. Ford Motor Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx), put Ford on notice of the facts that give rise to Plaintiff's individual action, the witnesses necessary for Ford to defend Plaintiff's individual action, and the causes of action against Ford asserted in Plaintiff's individual action.

83.     *Vargas v. Ford Motor Company*, United States District Court, Central District of California Case No. 2:12-cv-08388 ABC (FFMx), alleged the same or substantially similar material facts on behalf of Plaintiff as a putative class member as are being alleged by Plaintiff in the present individual action.

84.     The facts alleged in *Vargas v. Ford Motor Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ·ABC (FFMx),·are substantially similar, if not identical to the facts alleged herein.

85.     The allegations in *Vargas v. Ford Motor Company*, United States District Court, Central District of California, Case No. 2:12-cv-08388 ABC (FFMx), are based on the same subject matter and similar evidence as the instant Complaint. Those allegations concern the same evidence, memories, and witnesses as the subject matter in the instant Complaint.

86.     The *Vargas* class action certainly protected. the efficiency and economy of litigation because that class action is protecting the rights of thousands of consumers nationwide through a single action. Consumer class actions regarding defective vehicles brought against manufacturers are regularly certified, making a class action lawsuit an efficient means of pursuing such claims.

87.     The tolling of Plaintiff's individual statute of limitations encourages the protection

16

**COMPLAINT; JURY TRIAL DEMANDED**

1    of efficiency and economy in litigation as promoted by the class action devise, so that putative

2    class members would not find it necessary to seek to intervene or to join individually because of

3    fear the class might never be certified or putative class members may subsequently seek to request

4    exclusion.

5        88.    The running of all statute of limitations on each of Plaintiff's claims asserted

6    against Ford in the present action were therefore tolled under the tolling doctrine established by

7    *American Pipe & Construction Co. v. Utah* (1974) 414 U.S. 538 during the entire pendency of

8    the *Vargas* class action (i.e., from the date on which the *Vargas* class action was filed on

9    September 28, 2012 to the date on which Plaintiff filed the instant action).

10   <u>All Statute of Limitations Periods are Tolled By The California Doctrine of Equitable Tolling</u>

11               <u>as a Result of the Class Action *Vargas v. Ford Motor Company*</u>

12       89.    Plaintiff gave timely notice of Plaintiff's claims against Ford in the present action

13   as a putative class member in a class action, *Vargas v. Ford Motor Company*, United States

14   District Court. Central District of California, Case No. 2:12-cv-08388 ABC (FFMx), which was

15   filed on September 28, 2012. That action was filed within three years of the date of Plaintiff's

16   discovery of his claims against Ford in the present action, as previously described in detail above.

17       90.    There is no prejudice to Ford in gathering evidence to defend against Plaintiff's

18   individual claims because the class definition in the class action complaint within which Plaintiff

19   was a putative class member and the allegations in the-class action lawsuit, *Vargas v. Ford Motor*

20   *Company*, United States District Court, Central District of California, Case No 2:12-cv-08388

21   ABC (FFMx), put Ford on notice of the facts that give rise to Plaintiff's individual action, the

22   witnesses necessary for Ford to defend Plaintiff's individual action. and the causes of action

23   against Ford asserted in Plaintiff's individual action.

24       91.    *Vargas v. Ford Motor Company*, United States· District Court, Central District of

25   California, Case No 2:12-cv-08388 ABC (FFMx), alleged the same or substantially similar

26   material facts on behalf of Plaintiff as a putative class member as are being alleged by Plaintiff

27   in the present individual action.

28       92.    The facts alleged in *Vargas v. Ford Motor Company*, United States District Court,

CONSUMER LEGAL REMEDIES, APC
3111 NORTH ARROWHEAD AVENUE, BEVERLY HILLS, CA 90211

17

1    Central District of California, Case No 2:12-cv-08388 ABC (FFMx), are substantially similar, if

2    not identical to the facts alleged herein.

3         93.    The allegations in *Vargas v. Ford Motor Company*, United States District Court,

4    Central District of California, Case No 2:12-cv-08388 ABC (FFMx), are based on the same

5    subject matter and similar evidence as the instant Complaint. Those allegations concern the same

6    evidence, memories, and witnesses as the subject matter in the instant Complaint.

7         94.    The *Vargas* class action certainly protected the efficiency and economy of

8    litigation because that class action is protecting the rights of thousands of consumers nationwide

9    through a single action. Consumer class actions regarding defective vehicles brought against

10   manufacturers are regularly certified, making a class action lawsuit an efficient means of pursuing

11   such claims.

12        95.    Plaintiff acted reasonably and in good faith in filing the instant action. Shortly after

13   discovering Ford's fraudulent behavior, Plaintiff filed the instant action to pursue his individual

14   rights without delay.

15        96.    The tolling of Plaintiff's individual statute of limitations encourages the protection

16   of efficiency and economy in litigation as promoted by the class action devise, so that putative

17   class members would not find it necessary to seek to intervene or to join individually because of

18   fear the class might never be certified or putative class members may subsequently seek to request

19   exclusion.

20        97.    The running of all statute of limitations on each of Plaintiff's claims asserted

21   against Ford in the present-action were therefore tolled by *American Pipe* tolling during the entire

22   pendency of the *Vargas* class action (i.e., from the date on which the *Vargas* class action was filed

23   on September 28, 2012 to the date on which Plaintiff filed the instant action).

24        98.    Further, the running of the statute of limitations period applicable to Plaintiff's

25   fraudulent omission claim continues to be tolled because Ford continues to deny the existence

26   of the Transmission Defect and its duty to disclose it to consumers, including Plaintiff.

27        99.    Ford is also equitably estopped from relying on any statute of limitation because

28   of its concealment of the defective nature of the Vehicle and its PowerShift Transmission.

18

**COMPLAINT; JURY TRIAL DEMANDED**

100.   Further, this tolling continued by virtue of Plaintiff having joined as a plaintiff, after he opted out of the putative *Vargas* class and before the expiration of any applicable limitations period, a state court action in Michigan alleging claims based on the Transmission Defect. (Plaintiff will voluntarily dismiss, or otherwise terminate his involvement in this Michigan state court action, before proceeding further with this lawsuit.)

### FIRST CAUSE OF ACTION

### BY PLAINTIFF AGAINST DEFENDANT

### VIOLATION OF SUBDIVISION (D) OF CIVIL CODE SECTION 1793.2

101.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

102.   In connection with the purchase of the Vehicle, Plaintiff received an express written warranty in which Defendant undertook to preserve or maintain the utility or performance of the Vehicle or to provide compensation if there is a failure in utility or performance for a specified period of time. The warranty provided, in relevant part, that in the event a defect developed with the Vehicle during the warranty period, Plaintiff could deliver the Vehicle for repair services to Defendant's representative and the Vehicle would be repaired.

103.   During the warranty period, the Vehicle contained or developed defects, including but not limited to: sudden acceleration, delayed acceleration, hesitation on acceleration, difficulty stopping the vehicle, jerking, bucking and kicking, shuddering on acceleration, lack of power, delayed downshifts, transmission fluid leaks, premature wear and/or failure of the Vehicle's transmission control module (TCM), powertrain control module (PCM), and clutch, premature wear of the Vehicle's internal components, and/or any and all other defects as delineated in the repair orders. Said defects substantially impair the use, value, or safety of the Vehicle.

104.   Defendant and its representatives in this state have been unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of opportunities. Despite this fact, Defendant failed to promptly replace the Vehicle or make restitution to Plaintiff as required by Civil Code section 1793.2, subdivision (d) and Civil Code

CONSUMER LEGAL REMEDIES, APC
153 1/2 NORTH ASSOCIATE DRIVE, BEVERLY HILLS, CA 90211

19

1   section 1793.1, subdivision (a)(2).

2        105.    Plaintiff has been damaged by Defendant's failure to comply with its obligations

3   pursuant to Civil Code section 1793.2, subdivision (d) and Civil Code section 1793.1,

4   subdivision (a)(2), and therefore brings this cause of action pursuant to Civil Code section 1794.

5        106.    Plaintiff suffered damages in a sum to be proven at trial in an amount that exceeds

6   $25,000.

7        107.    Defendant's failure to comply with its obligations under Civil Code section

8   1793.2, subdivision (d) was willful, in that Defendant and its representative were aware that

9   they were unable to service or repair the Vehicle to conform to the applicable express warranties

10  after a reasonable number of repair attempts, yet Defendant failed and refused to promptly

11  replace the Vehicle or make restitution. Accordingly, Plaintiff is entitled to a civil penalty of

12  two times Plaintiff's actual damages pursuant to Civil Code section 1794, subdivision (c).

13       108.    Defendant does not maintain a qualified third-party dispute resolution process

14  which substantially complies with Civil Code section 1793.22. Accordingly, Plaintiff is entitled

15  to a civil penalty of two times Plaintiff's actual damages pursuant to Civil Code section 1794,

16  subdivision (e).

17       109.    Plaintiff seeks civil penalties pursuant to section 1794, subdivisions (c), and (e)

18  in the alternative and does not seek to cumulate civil penalties, as provided in Civil Code section

19  1794, subdivision (f).

20                          **SECOND CAUSE OF ACTION**

21                      **BY PLAINTIFF AGAINST DEFENDANT**

22        **VIOLATION OF SUBDIVISION (B) OF CIVIL CODE SECTION 1793.2**

23       110.    Plaintiff incorporates herein by reference each and every allegation contained in

24  the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

25       111.    Although Plaintiff presented the Vehicle to Defendant's representative in this

26  state, Defendant and its representative failed to commence the service or repairs within a

27  reasonable time and failed to service or repair the Vehicle so as to conform to the applicable

28  warranties within 30 days, in violation of Civil Code section 1793.2, subdivision (b). Plaintiff

CONSUMER LEGAL REMEDIES, APC
1513/2 NORTH ARSOCC DRIVE, BEVERLY HILLS, CA 90211

20

1    did not extend the time for completion of repairs beyond the 30-day requirement.

2        112.   Plaintiff has been damaged by Defendant's failure to comply with its obligations

3    pursuant to Civil Code section 1793.2(b), and therefore brings this Cause of Action pursuant to

4    Civil Code section 1794.

5        113.   Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the

6    Vehicle, and has exercised a right to cancel the purchase. By serving this Complaint, Plaintiff

7    does so again. Accordingly, Plaintiff seeks the remedies provided in California Civil Code

8    section 1794(b)(1), including the entire contract price. In the alternative, Plaintiff seeks the

9    remedies set forth in California Civil Code section 1794(b)(2), including the diminution in value

10   of the Vehicle resulting from its defects. Plaintiff believes that, at the present time, the Vehicle's

11   value is *de minimis*.

12       114.   Defendant's failure to comply with its obligations under Civil Code section

13   1793.2(b) was willful, in that Defendant and its representative were aware that they were

14   obligated to service or repair the Vehicle to conform to the applicable express warranties within

15   30 days, yet they failed to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times

16   Plaintiff's actual damages pursuant to Civil Code section 1794(c).

17                          **THIRD CAUSE OF ACTION**

18                     **BY PLAINTIFF AGAINST DEFENDANT**

19        **VIOLATION OF SUBDIVISION (A)(3) OF CIVIL CODE SECTION 1793.2**

20       115.   Plaintiff incorporates herein by reference each and every allegation contained in

21   the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

22       116.   In violation of Civil Code section 1793.2, subdivision (a)(3), Defendant failed to

23   make available to its authorized service and repair facilities sufficient service literature and

24   replacement parts to effect repairs during the express warranty period. Plaintiff has been

25   damaged by Defendant's failure to comply with its obligations pursuant to Civil Code section

26   1793.2(a)(3), and therefore brings this Cause of Action pursuant to Civil Code section 1794.

27       117.   Defendant's failure to comply with its obligations under Civil Code section

28   1793.2, subdivision (a)(3) was wilful, in that Defendant knew of its obligation to provide

CONSUMER LEGAL REMEDIES, APC
1513 1/2 NORTH ARNAZ DRIVE, BEVERLY HILLS, CA 90211

21

1 | literature and replacement parts sufficient to allow its repair facilities to effect repairs during
2 | the warranty period, yet Defendant failed to take any action to correct its failure to comply with
3 | the law. Accordingly, Plaintiff is entitled to a civil penalty of two times Plaintiff's actual
4 | damages; pursuant to Civil Code section 1794(c).

## FOURTH CAUSE OF ACTION

## BY PLAINTIFF AGAINST DEFENDANT

## BREACH OF EXPRESS WRITTEN WARRANTY

## (CIV. CODE, § 1791.2, SUBD. (a); § 1794)

118.    Plaintiff incorporates herein by reference each and every allegation contained in the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

119.    In accordance with Defendant's warranty, Plaintiff delivered the Vehicle to Defendant's representative in this state to perform warranty repairs. Plaintiff did so within a reasonable time. Each time Plaintiff delivered the Vehicle, Plaintiff notified Defendant and its representative of the characteristics of the Defects. However, the representative failed to repair the Vehicle, breaching the terms of the written warranty on each occasion.

120.    Plaintiff has been damaged by Defendant's failure to comply with its obligations under the express warranty, and therefore brings this Cause of Action pursuant to Civil Code section 1794.

121.    Defendant's failure to comply with its obligations under the express warranty was willful, in that Defendant and its authorized representative were aware that they were obligated to repair the Defects, but they intentionally refused to do so. Accordingly, Plaintiff is entitled to a civil penalty of two times of Plaintiff's actual damages pursuant to Civil Code section 1794(c).

## FIFTH CAUSE OF ACTION

## BY PLAINTIFF AGAINST DEFENDANT

## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

## (CIV. CODE, § 1791.1; § 1794)

122.    Plaintiff incorporates herein by reference each and every allegation contained in

22

1   the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

2       123.   Pursuant to Civil Code section 1792, the sale of the Vehicle was accompanied

3   by Defendant's implied warranty of merchantability. Pursuant to Civil Code section 1791.1, the

4   duration of the implied warranty is coextensive in duration with the duration of the express

5   written warranty provided by Defendant, except that the duration is not to exceed one-year.

6       124.   Pursuant to Civil Code section 1791.1 (a), the implied warranty of

7   merchantability means and includes that the Vehicle will comply with each of the following

8   requirements: (1) The Vehicle will pass without objection in the trade under the contract

9   description; (2) The Vehicle is fit for the ordinary purposes for which such goods are used; (3)

10   The Vehicle is adequately contained, packaged, and labelled; (4) The Vehicle will conform to

11   the promises or affirmations of fact made on the container or label.

12       125.   At the time of purchase, or within one-year thereafter, the Vehicle contained or

13   developed the defects set forth above. The existence of each of these defects constitutes a breach

14   of the implied warranty because the Vehicle (1) does not pass without objection in the trade

15   under the contract description, (2) is not fit for the ordinary purposes for which such goods are

16   used, (3) is not adequately contained, packaged, and labelled, and (4) does not conform to the

17   promises or affirmations of fact made on the container or label.

18       126.   Plaintiff has been damaged by Defendant's failure to comply with its obligations

19   under the implied warranty, and therefore brings this Cause of Action pursuant to Civil Code

20   section 1794.

21                     **SIXTH CAUSE OF ACTION**

22     **BY PLAINTIFF AGAINST DEFENDANT FORD MOTOR COMPANY**

23      **(Fraudulent Inducement – Intentional Misrepresentation)**

24       127.   Plaintiff incorporates herein by reference each and every allegation contained in

25   the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

26       128.   Ford drafted, produced, and distributed marketing brochures to the public

27   containing factual representations about the PowerShift Transmission. Ford's marketing brochure

28   for the Vehicle represented that the PowerShift Transmission had the following qualities:

CONSUMER LEGAL REMEDIES, APC
151 1/2 NORTH ARNAZ DRIVE, BEVERLY HILLS, CA 90211

a.    "A PowerShift 6-speed automatic delivers torque to the wheels 100% of the time during shifts, supplying excellent responsiveness."

129.    Unfortunately, the Vehicle as delivered to Plaintiff had extremely poor handling on all roads, as Plaintiff's drive was repeatedly interrupted by jerky shifts and hesitation. Plaintiff's Vehicle was also not equipped with an "automatic" transmission, contrary to Ford's suggestion that the transmission is a traditional "automatic." Plaintiff's Vehicle in fact contained an unproven automated dual clutch manual transmission. Plaintiff's Vehicle did not have seamless gear changes - it experienced jerky gear changes and hesitation between shifts, which necessitated several repairs and repeated reprogramming of the transmission control module - none of which were sufficient to resolve the Transmission Defect.

130.    Ford made such representations regarding the PowerShift Transmission in the 2015 Ford Fiesta despite its extensive internal knowledge of the Transmission Defect and other problems. Ford's knowledge of the Transmission Defect is laid out in detail in paragraphs 43-50.

131.    Ford informed its dealers and authorized service facilities and personnel, about common behavior characteristics of the PowerShift Transmission in July 2011. In a memo with instructions sent to Ford dealers and authorized service personnel, Ford noted that some of the common characteristics of the PowerShift Transmission include double clicking metal sounds, coast down whine, low speed grinding, and reverse gear whine. Despite this admission by Ford to its dealers, repair facilities, and agents, Ford continued to represent to the public that the PowerShift Transmission offered "great handling on all roads," and "the performance of a manual," and "seamless gear changes for amazing responsiveness," - a wildly different picture from the reality. Ford made the statements in its marketing brochures recklessly and without regard for their truth.

132.    In addition, Ford misrepresented the type of transmission equipped in the Vehicle. Throughout its marketing brochure, Ford states that the Vehicle is equipped with a 6-speed automatic transmission. That representation is false. The Vehicle is actually equipped with the Ford PowerShift Transmission, which is in fact a dual clutch transmission, which operates using direct mechanical engagement and disengagement similar to a manual transmission. This

CONSUMER LEGAL REMEDIES, APC
1531/2 NORTH ARMACOST AVE, BEVERLY HILLS, CA 90211

24

1   information is material for a consumer to know in making a purchasing decision, because unlike

2   a traditional automatic transmission, Ford's PowerShift dual clutch transmission powers the drive

3   wheels through a clutch, rather than a torque converter. The use of a clutch can result in a

4   substantially jerkier ride than that produced using a torque converter, particularly in an unproven

5   design. Plaintiff would not have purchased the Vehicle had he known the Vehicle's transmission

6   technology would cause the drive to be jerky, unreliable, and dangerous as a result of the unproven

7   dual-clutch (rather than automatic) system.

8       133.   Defendants intended that Plaintiff rely on the representations made in the

9   marketing brochure related to the transmission in inducing Plaintiff to purchase the Vehicle.

10      134.   Plaintiff reasonably relied on Defendant's representations related to the

11  transmission being "automatic" and providing a smooth ride because Ford was the manufacturer

12  of the Vehicle and claimed to have performed and relied upon extensive pre-release testing of the

13  PowerShift Transmission. Ford was in a superior position of knowledge.

14      135.   Plaintiff was harmed by purchasing a vehicle that he would not have purchased

15  had he known the true facts about the PowerShift Transmission and the Transmission Defects

16  affecting it.

17      136.   Plaintiff's reliance on Defendants' representations about the transmission qualities

18  was a substantial factor in Plaintiff's harm, as Ford and its agents were the exclusive source of

19  information about the qualities of the transmission.

20              **SEVENTH CAUSE OF ACTION**

21      **BY PLAINTIFF AGAINST DEFENDANT FORD MOTOR COMPANY**

22                  **(Fraud by Omission)**

23      137.   Plaintiff incorporates herein by reference each and every allegation contained in

24  the preceding and succeeding paragraphs as though herein fully restated and re-alleged.

25      138.   Ford committed fraud by allowing to be sold to Plaintiff the Vehicle without

26  disclosing that the Vehicle and its PowerShift Transmission were defective and susceptible to

27  sudden and premature failure.

28      139.   In particular, Plaintiff is informed, believes, and thereon alleges that prior to

CONSUMER LEGAL REMEDIES, APC
15317/2 NORTH ARROGO DRIVE, BEVERLY HILLS, CA 90211

25

1 | Plaintiff acquiring the Vehicle, Ford was well aware and knew that the PowerShift Transmission
2 | installed on the Vehicle was defective but failed to disclose this fact to Plaintiff at the time of
3 | sale and thereafter.[1]

4 |     140.    Specifically, Ford knew or should have known that the PowerShift Transmission
5 | had the "Transmission Defect." The Transmission Defect presents a safety hazard and is
6 | unreasonably dangerous to consumers because it can suddenly and unexpectedly affect the
7 | driver's ability to control the vehicle's speed, acceleration, and deceleration.

8 |     141.    Plaintiff is informed, believes, and thereon alleges that Ford acquired its
9 | knowledge of the Transmission Defect prior to Plaintiff acquiring the Vehicle, through sources
10 | not available to consumers such as Plaintiff, including but not limited to pre-production and
11 | post-production testing data, early consumer complaints about the Transmission Defect made
12 | directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's
13 | network of dealers, testing conducted by Ford in response to these complaints, as well as
14 | warranty repair and part replacements data received by Ford from Ford's network of dealers,
15 | amongst other sources of internal information.

16 |     142.    Plaintiff is informed, believes, and thereon alleges that while Defendant Ford
17 | Motor Company knew about the Transmission Defect, and its safety risks since 2010, if not
18 | before, Ford nevertheless concealed and failed to disclose the defective nature of the Vehicle
19 | and its PowerShift Transmission to Plaintiff at the time of sale and thereafter. Had Plaintiff
20 | known that the Vehicle suffered from the Transmission Defect, he would not have purchased
21 | the Vehicle.

22 |     143.    Indeed, Plaintiff alleges that Ford knew that the Vehicle and its PowerShift
23 | Transmission suffered from an inherent defect, was defective, would fail prematurely, and was
24 | not suitable for its intended use.

25 |     144.    Ford was under a duty to Plaintiff to disclose the defective nature of the Vehicle
26 | and its PowerShift Transmission, its safety consequences and/or the associated repair costs
27 |
28 |    [1] Indeed, Ford has issued various technical bulletins to its dealers (not consumers) concerning the defective PowerShift Transmission as outlined in more detail, *supra*.

because:

     a.     Ford acquired its knowledge of the Transmission Defect and its potential consequences prior to Plaintiff acquiring the Vehicle, though sources not available to consumers such as Plaintiff, including but not limited to pre-production testing data, early consumer complaints about the Transmission Defect made directly to Ford and its network of dealers, aggregate warranty data compiled from Ford's network of dealers, testing conducted by Ford in response to these complaints, as well as warranty repair and part replacements data received by Ford from Ford's network of dealers, amongst other sources of internal information;

     b.     Ford was in a superior position from various internal sources to know (or should have known) the true state of facts about the material defects contained in vehicles equipped with PowerShift Transmission; and

     c.     Plaintiff could not reasonably have been expected to learn or discover of the Vehicle's Transmission Defect and its potential consequences until well after Plaintiff purchased the Vehicle.

145.     In failing to disclose the Transmission Defect to Plaintiff, Ford has knowingly and intentionally concealed material facts and breached its duty not to do so.

146.     The facts concealed or not disclosed by Ford to Plaintiff are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase or lease the Vehicle. Had Plaintiff known that the Vehicle and its transmission were defective at the time of sale, he would not have purchased the Vehicle.

147.     Plaintiff is a reasonable consumer who does not expect his transmission to fail and not work properly. Plaintiff further expects and assumes that Ford will not sell or lease vehicles with known material defects, including but not limited to those involving the vehicle's transmission, and will disclose any such defect to its consumers before selling such vehicles.

148.     As a result of Defendant Ford Motor Company's misconduct, Plaintiff has suffered and will continue to suffer actual damages.

CONSUMER LEGAL REMEDIES, APC
1531 / 2 NORTH ARANGE DRIVE, BEVERLY HILLS, CA 90211

1

**PRAYER**

2    PLAINTIFF PRAYS for judgment against Defendant as follows:

3    a.    For Plaintiff's actual damages in an amount according to proof;

4    b.    For restitution;

5    c.    For a civil penalty in the amount of two times Plaintiff's actual damages

6          pursuant to Civil Code section 1794, subdivision (c) or (e);

7    d.    For any consequential and incidental damages;

8    e.    For costs of the suit and Plaintiff's reasonable attorneys' fees pursuant to Civil

9          Code section 1794, subdivision (d);

10   f.    For any remedies pursuant to the Song-Beverly Act, the California Uniform

11         Commercial Code and/or any other remedy that the Court deems proper;

12   g.    For prejudgment interest at the legal rate;

13   h.    For punitive damages; and,

14   i.    For such other relief as the Court may deem proper.

15

16

**DEMAND FOR JURY TRIAL**

17   Plaintiff hereby demands a jury trial on all causes of action asserted herein.

18

Dated: September 18, 2018                    CONSUMER LEGAL REMEDIES, APC

19

20                                  BY:

21                                       MICHAEL D. RESNICK
                                         Attorney for Plaintiff,
22                                       STEPHEN BURTON

23

24

25

26

27

28

COMPLAINT; JURY TRIAL DEMANDED

**CONSUMER LEGAL REMEDIES, APC**
151 1/2 North Arnaz Drive, Beverly Hills, CA 90211

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Michael Resnick (SBN 245215) & Neil Gieleghem (SBN 107389)<br>Consumer Legal Remedies, APC<br>153 1/2 North Arnaz Drive<br>Beverly Hills, California 90211<br>TELEPHONE NO.: (833) 429-9222   FAX NO.: (213) 210-2196<br>ATTORNEY FOR *(Name):* Plaintiff Stephen Burton | **FOR COURT USE ONLY**<br><br>CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br><br>SEP 19 2018<br><br>Sherri R. Carter, Executive Officer/Clerk of Court<br>By: Judi Lara, Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
STEPHEN BURTON v. FORD MOTOR COMPANY

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC 7 2 2 5 8 3 |
| | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☑ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a.☑ monetary   b.☐ nonmonetary; declaratory or injunctive relief   c.☑ punitive
4. Number of causes of action *(specify):* Seven (7)
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: September 18, 2018

Michael D. Resnick
_____
(TYPE OR PRINT NAME)                                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

COPY

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)
**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*
**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

| SHORT TITLE:<br>STEPHEN BURTON v. FORD MOTOR COMPANY | CASE NUMBER<br>**BC 7 2 2 5 8 8** |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.



**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐  A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐  A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/Wrongful Death Tort** | Asbestos (04) | ☐  A6070  Asbestos Property Damage | 1, 11 |
| | | ☐  A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| | Product Liability (24) | ☐  A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐  A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | | ☐  A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐  A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | | ☐  A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | | ☐  A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | | ☐  A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

COPY

| SHORT TITLE: | CASE NUMBER |
|---|---|
| STEPHEN BURTON v. FORD MOTOR COMPANY | |

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐  A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐  A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐  A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☑  A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐  A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐  A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐  A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐  A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐  A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐  A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐  A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐  A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐  A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☑  A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐  A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐  A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐  A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐  A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐  A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐  A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐  A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐  A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐  A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐  A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐  A6032  Quiet Title | 2, 6 |
| | | ☐  A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐  A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐  A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐  A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐  A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

| SHORT TITLE: STEPHEN BURTON v. FORD MOTOR COMPANY | CASE NUMBER |
|---|---|

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: | CASE NUMBER |
|---|---|
| STEPHEN BURTON v. FORD MOTOR COMPANY | |

**Step 4:** **Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS:<br>818 W. Seventh Street, Suite 930 |
|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90017 | |

**Step 5:** **Certification of Assignment:** I certify that this case is properly filed in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: September 18, 2018

(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:
111 North Hill Street, Los Angeles, CA 90012

### NOTICE OF CASE ASSIGNMENT
### UNLIMITED CIVIL CASE - IC

Reserved for Clerk's File Stamp

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

SEP 19 2018

Sherri R. Carter, Executive Officer/Clerk of Court

By: Judi Lara, Deputy

CASE NUMBER:
BC 7 2 2 5 8 3

Your case is assigned for all purposes to the judicial officer indicated below.

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| ASSIGNED JUDGE | DEPT | ROOM | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|
| Hon. Debre K. Weintraub | 1 | 534 | Hon. Randolph Hammock | 47 | 507 |
| Hon. Barbara A. Meiers | 12 | 636 | Hon. Elizabeth Allen White | 48 | 506 |
| Hon. Terry A. Green | 14 | 300 | Hon. Deirdre Hill | 49 | 509 |
| Hon. Richard Fruin | 15 | 307 | Hon. Teresa A. Beaudet | 50 | 508 |
| Hon. Lia Martin | 16 | 306 | Hon. Dennis J. Landin | 51 | 511 |
| Hon. Richard E. Rico | 17 | 309 | Hon. Susan Bryant-Deason | 52 | 510 |
| Hon. Stephanie Bowick | 19 | 311 | Hon. Robert Broadbelt | 53 | 513 |
| Hon. Dalila Corral Lyons | 20 | 310 | Hon. Ernest M. Hiroshige | 54 | 512 |
| Hon. Patricia Nieto | 24 | 314 | Hon. Malcolm H. Mackey | 55 | 515 |
| Hon. Yvette M. Palazuelos | 28 | 318 | Hon. Holly J. Fujie | 56 | 514 |
| Hon. Barbara Scheper | 30 | 400 | Hon. Steven J. Kleifield | 57 | 517 |
| Hon. Samantha Jessner | 31 | 407 | Hon. John P. Doyle | 58 | 516 |
| Hon. Daniel S. Murphy | 32 | 406 | Hon. Gregory Keosian | 61 | 732 |
| Hon. Michael P. Linfield | 34 | 408 | Hon. Michael L. Stern | 62 | 600 |
| Hon. Gregory Alarcon | 36 | 410 | Hon. Mark Mooney | 68 | 617 |
| Hon. David S. Cunningham | 37 | 413 | Hon. William F. Fahey | 69 | 621 |
| Hon. Maureen Duffy-Lewis | 38 | 412 | Hon. Monica Bachner | 71 | 729 |
| Hon. Elizabeth Feffer | 39 | 415 | Hon. Ruth Ann Kwan | 72 | 731 |
| Hon. David Sotelo | 40 | 414 | Hon. Rafael Ongkeko | 73 | 733 |
| Hon. Holly E. Kendig | 42 | 416 | Hon. Michelle Williams Court | 74 | 735 |
| Hon. Mel Red Recana | 45 | 529 | Hon. Robert S. Draper | 78 | 730 |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on SEP 19 2018
     (Date)

SHERRI R. CARTER, Executive Officer/Clerk of Court

By Judi Lara , Deputy Clerk

LACIV 190 (Rev 12/17)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**